IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CINDY NORBERG,                                    3:15-CV-00427-BR

           Plaintiff,                  OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

           Defendant.


GEORGE J. WALL
1336 E. Burnside
Suite 130
Portland, OR 97214
(503) 236-0068

           Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**HEATHER L. GRIFFITH**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3709

        Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Cindy Norberg seeks judicial review of a final
decision of the Commissioner of the Social Security Admini-
stration (SSA) in which she denied Plaintiff's applications for
Supplemental Security Income (SSI) and Disability Insurance
Benefits (DIB) under Titles XVI and II of the Social Security
Act.  This Court has jurisdiction to review the Commissioner's
final decision pursuant to 42 U.S.C. § 405(g).

     For the reasons that follow, the Court **AFFIRMS** the decision
of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

     Plaintiff filed applications for DIB and SSI on
July 15, 2011, and alleged a disability onset date of
August 9, 2010.  Tr. 19, 101.[1]  Her applications were denied
initially and on reconsideration.  An Administrative Law Judge

───────────────

     [1] Citations to the official transcript of record filed by
the Commissioner on July 21, 2015, are referred to as "Tr."

2 - OPINION AND ORDER

(ALJ) held a hearing on July 19, 2013.  Tr. 42-100.  At the hearing Plaintiff, a vocational expert (VE), and a lay witness testified.  Plaintiff was represented by an attorney.

On August 9, 2013, the ALJ issued an opinion in which she found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 19-34.  On February 25, 2015, that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  Tr. 1-7.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on August 13, 1958.  Tr. 141.  Plaintiff was 54 years old at the time of the hearing.  Plaintiff graduated from high school and has one year of college.  Tr. 46.  Plaintiff has past relevant work experience as a check cashier, bookkeeper, loan officer, restaurant manager, retail manager, program writer, waitress, and fast-food manager.  Tr. 32.

Plaintiff alleges disability due to breast cancer, complications with reconstructive surgeries, depression, anxiety, and post-traumatic stress disorder (PTSD).

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 25-31.

3 - OPINION AND ORDER

**STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairments or combination of impairments.  20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform

work she has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv),
416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine
whether the claimant is able to do any other work that exists in
the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the
burden shifts to the Commissioner to show a significant number of
jobs exist in the national economy that the claimant can perform.
*Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th
Cir. 2010).  The Commissioner may satisfy this burden through the
testimony of a VE or by reference to the Medical-Vocational
Guidelines set forth in the regulations at 20 C.F.R. part 404,
subpart P, appendix 2.  If the Commissioner meets this burden,
the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1),
416.920(g)(1).


## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in
substantial gainful activity since her August 9, 2010, alleged
onset date.[2]  Tr. 21.

At Step Two the ALJ found Plaintiff has the severe

---

[2] The ALJ identifies Plaintiff's onset date as August 10,
2009, at Step One, but it is clear from the record and the ALJ's
opinion that Plaintiff's onset date is August 9, 2010, and that
is the date the ALJ considered in her analysis.

impairments of breast cancer, an affective disorder, and an
anxiety disorder.  Tr. 21.  The ALJ found Plaintiff's impairment
of "subclinical hyperthyroidism" is not severe.  Tr. 22.

At Step Three the ALJ concluded Plaintiff's medically
determinable impairments do not meet or medically equal one of
the listed impairments in 20 C.F.R. part 404, subpart P, appendix
1.  Tr. 24.  The ALJ found Plaintiff has the RFC to perform light
work.  Tr. 24.  The ALJ found Plaintiff could frequently reach,
handle, and finger.  Tr. 24.  The ALJ further limited Plaintiff
as follows:

> She is capable of relatively simple work
> equivalent to low, semi-skilled jobs or
> well-learned tasks.  She can have superficial
> contact with the public, which means she is able
> to engage in contact with the public that would
> include providing directions, answering questions,
> giving change, and performing routine services for
> the public.  She could not engage in intensive
> mediation, problem solving, dispute resolution or
> the kind of interactions with the public required
> to work in a complaint department or possibly even
> as a loan officer.

Tr. 24.

At Step Four the ALJ concluded Plaintiff is capable of
performing her past relevant work as a check cashier and
waitress.  Tr. 32.

The ALJ also made an alternative Step Five finding that
Plaintiff is capable of performing other jobs existing in the
national economy as a mail sorter, price marker, and electronics
worker.  Tr. 33-34.  Accordingly, the ALJ found Plaintiff is not

8 - OPINION AND ORDER

disabled.

## DISCUSSION

Plaintiff contends the ALJ erred when she (1) improperly gave "little weight" to the opinion of Plaintiff's treating physician Grace Lee, M.D.; (2) improperly gave "little weight" to the lay-witness testimony of Richard Olson and the lay-witness statement of LeeAnn Dickinson; and (3) improperly found at Step Four that Plaintiff could perform her past relevant work.

**I.    The ALJ did not err when she gave "little weight" to Dr. Lee's opinion.**

Plaintiff asserts the ALJ erred when she gave "little weight" to the opinion of treating physician Dr. Lee.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32.

On July 9, 2013, Dr. Lee provided an opinion letter and Mental Residual Functional Capacity Assessment of Plaintiff in

9 - OPINION AND ORDER

which she stated

> It is more than likely that [Plaintiff] would have
> difficulty concentrating to remain on task for
> more than four hours total in an eight hour work
> day.  Further, she would probably be unable to
> maintain a regular work schedule and have multiple
> unscheduled absences.  The combination of
> [Plaintiff's] mental and physical health
> conditions would more than likely result in her
> missing at least two or more days of work a month
> and she would not be able to sustain employment in
> work requiring regular attendance, that is, five
> days a week, eight hours per day, for more than
> two to three days at a time.

Tr. 1090.  Dr. Lee opined Plaintiff had "moderately severe"
limitations in her ability to remember locations and work-like
procedures, to "understand and [to] remember detailed (three or
more step) instructions," to "carry out detailed (three or more
step) instructions," to maintain concentration for at least "two
straight hours with at least four such sessions in a workday," to
work in coordination with or proximity to others without being
distracted, to make "simple work-related decisions," to complete
a normal workday and work week "without interruptions from
psychologically based symptoms," to interact appropriately with
the general public or customers, to accept instructions and
criticism from supervisors, to get along with coworkers or peers,
and to set realistic goals.  Tr. 1092-93.

The ALJ gave "little weight" to Dr. Lee's July 2013 opinion
because it relied heavily on Plaintiff's self-report and was
otherwise unsupported by the record.  Dr. Lee stated in her

report that Plaintiff "reports symptoms . . . [and] as a result of the above symptoms, it is more than likely that [Plaintiff] would have difficulty concentrating to remain on task for more than four hours total in an eight hour work day."  Thus, the record reflects Dr. Lee's opinion was based in part on Plaintiff's self-reports.  The ALJ, however, found Plaintiff's testimony was not entirely credible, and Plaintiff does not challenge that finding.

In addition, the ALJ noted Plaintiff underwent a neuropsychological evaluation with Molly McKenna, Ph.D., in April 2013, just three months before Dr. Lee issued his opinion. During that evaluation Plaintiff was given the test for Premorbid Function (TOPF), the Repeatable Battery for the Assessment of Neuropsychological Status (RBANS), the Sentence Repetition Test, the TrailMaking test A and B, and the Frontal Assessment Battery. Tr. 1033.  Dr. McKenna noted on Plaintiff's TOPF, her "score was unusually low, resulting in an estimated IQ of 75 which was "well below the predicted level based on demographic criteria which would predict IQ of 105. . . .  This discrepancy between the two estimates is quite unusual in the general population," and "seems unusually low given her history of employment level."  Tr. 1034. Dr. McKenna found Plaintiff's RBANS scores "were highly variable[,] . . . relatively unusual . . . [, and] likely to be invalid given their inconsistency with her observed behavior and

known brain function." Tr. 1034.  Plaintiff "struggled with digit span . . . [s]uggestive of poor effort in the general population." Tr. 1034.  On the Sentence Repetition Test Plaintiff received a score "below the first Percentile[,] . . . a statistically unusual score and relatively inconsistent with her observed abilities." Tr. 1035.  On the Trail-Making Test Plaintiff scored in the seventh percentile on part A and below the first percentile on part B." Tr. 1035.  In summary Dr. McKenna concluded Plaintiff was "very depressed and highly distraught." Tr. 1035.  Dr. McKenna also found Plaintiff's "expression of her psychological symptoms is very dramatic and possibly amplified slightly; she uses fairly extreme terms to describe her experiences." Tr. 1036.  Dr. McKenna stated Plaintiff did not have any "notable signs of interview that indicated obvious cognitive deficits," but Plaintiff "may have periodic difficulty with attention, concentration, and simultaneous processing of information due to the interference of psychiatric symptoms." Tr. 1036.

Similarly, throughout April and May 2013 Plaintiff's mental-

health counselor assessed her with GAFs of 60[3] indicating
moderate symptoms.  The ALJ noted even when Plaintiff was
admitted to in-patient psychiatric care in April 2012 following
the death of her son and her diagnosis with breast cancer, her
examining psychiatrist assessed her with a GAF of 55 on admission
and a GAF of 65[4] on discharge.

The ALJ pointed out that Plaintiff collected unemployment
benefits in 2011 and 2012 until they were exhausted.  Plaintiff
testified at the hearing that she had to apply for three jobs per
week to collect her unemployment benefits, but she applied for as
many as five jobs per week including jobs in management, as a
bank teller, and as a receptionist.  The ALJ found these job-
search activities were inconsistent with Dr. Lee's assessment
that Plaintiff has disabling symptoms and limitations.

On this record the Court concludes the ALJ did not err when

---

[3] Although the fifth edition of the *Diagnostic and
Statistical Manual of Mental Disorders* issued May 27, 2013 (DSM-
V), abandoned the GAF scale in favor of standardized assessments
for symptom severity, diagnostic severity, and disability, at the
time of Plaintiff's assessment and the ALJ's opinion the GAF
scale was used to report a clinician's judgment of the patient's
overall level of functioning on a scale of 1 to 100.  *See
Diagnostic and Statistical Manual of Mental Disorders IV*, 31-34
(4th ed. 2000)).  In the fourth edition, a GAF of 51-60 indicated
moderate symptoms or moderate difficulty in social, occupational,
or school functioning.

[4] A GAF of 61-70 indicates mild symptoms (*e.g.* depressed
mood and mild insomnia) or some difficulty in social,
occupational, or school functioning, but generally functioning
pretty well and has some meaningful interpersonal relationships.

she gave little weight to Dr. Lee's opinion because the ALJ
provided legally sufficient reasons supported by substantial
evidence in the record for doing so.

## II.  The ALJ did not err when she gave "little weight" to lay-witness testimony and statements.

Plaintiff asserts the ALJ erred when she gave little weight
to the lay testimony of Richard Olson, Plaintiff's partner, and
LeeAnn Dickson, Plaintiff's friend.

Lay testimony regarding a claimant's symptoms is competent
evidence that the ALJ must consider unless he "expressly
determines to disregard such testimony and gives reasons germane
to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511
(9th Cir. 2001).  The ALJ's reasons for rejecting lay-witness
testimony must also be "specific." *Stout v. Comm'r*, 454 F.3d
1050, 1054 (9th Cir. 2006).  When "the ALJ's error lies in a
failure to properly discuss competent lay testimony favorable to
the claimant, a reviewing court cannot consider the error
harmless unless it can confidently conclude that no reasonable
ALJ, when fully crediting the testimony, could have reached a
different disability determination." *Stout,* 454 F.3d at 1056.

Olson testified at the hearing that after Plaintiff's son
died in August 2010 Plaintiff "hardly got out of bed, cried a
lot[,] . . . couldn't take showers [or] baths . . . [and] quit
cleaning the house."  Tr. 82.  Olson testified Plaintiff, at the
time of the hearing, was unable to pay her bills, to track her

14 - OPINION AND ORDER

appointments, to track her medications, or to cook because she has problems with concentration.    Tr. 81-82.    Olson testified Plaintiff's health problems resulting from a staph infection in 2012 affected her cognitive abilities.    Tr. 83.    Olson noted he and Plaintiff have their grandchildren over almost every weekend when Olson is home from work.    Tr. 85.    Olson also noted he and Plaintiff traveled to visit their grandchildren, Plaintiff and her daughter visited Olson at his job in Seattle, and he and Plaintiff traveled to Alaska to visit Plaintiff's friend. Tr. 86-88.

LeeAnn Dickson submitted a letter on July 10, 2013, in which she noted in the previous two years that Plaintiff's "ability to withstand stress and trauma change[d] to a point of having to be hospitalized because she was unable to stop crying."    Tr. 303. Dickson stated Plaintiff is frequently distracted and unable to remember previous conversations, and "her cognitive abilities [have] diminish[ed] in the area of memory and ability to focus." Tr. 303.

The ALJ gave little weight to Olson's testimony as to Plaintiff's degree of difficulty with memory and concentration as well as to her activities of daily living and also gave little weight to Dickson's statement because their opinions of Plaintiff's impairments relied at least in part on Plaintiff's representations, which the ALJ had already found were not fully

credible.  The ALJ also noted Olson's testimony and Dickson's statement as to Plaintiff's difficulties with memory, concentration, pain, and depression were not supported by Olson's reports of Plaintiff's travel and sightseeing or by the medical record.  Tr. 32.

The Court concludes on this record that the ALJ did not err when she gave little weight to Olson's testimony as to Plaintiff's degree of difficulty with memory and concentration as well as to her activities of daily living and gave little weight to Dickson's statement because the ALJ provided legally sufficient reasons for doing so.

**III. The ALJ did not err at Step Four when she found Plaintiff could perform her past relevant work.**

The ALJ found at Step Four that Plaintiff can perform her past relevant work as a check cashier and waitress, both of which are rated as requiring Reasoning Level Three by the Dictionary of Occupational Titles (DOT).  Plaintiff, however, asserts the ALJ's finding at Step Four is unsupported because the ALJ limited Plaintiff to "relatively simple work equivalent to low, semi-skilled jobs or well-learned tasks," which, according to Plaintiff, is inconsistent with Reasoning Level Three.  Plaintiff relies on the Ninth Circuit's decision in *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015), to support her position.

In *Zavalin* the ALJ found the plaintiff retained the RFC to perform "simple, routine, or repetitive tasks."  The ALJ also

16 – OPINION AND ORDER

found at Step Five that the plaintiff was not disabled because he
was able to perform the jobs of cashier and surveillance system
monitor, both of which are categorized as Reasoning Level Three
in the DOT.  The Ninth Circuit noted Reasoning Level Three is
defined in the DOT as "the ability to follow written, oral, or
diagrammatic instructions and to deal with problems involving
several variables from a standardized situation" and found the
ALJ in that case failed to ask the VE "to explain how a person
who can only do simple[, routine, or repetitive] jobs because of
impairments . . . could meet Level 3 Reasoning's requirements."
*Id.* at 844.  Ultimately the court concluded "there is an apparent
conflict between [the plaintiff's] limitation to simple, routine,
or repetitive tasks . . . and the demands of Level 3 Reasoning."
*Id.* at 843-44.

Here, however, the ALJ found Plaintiff was limited to
"relatively simple work equivalent to low, semi-skilled jobs or
well-learned tasks."  When the ALJ asked the VE about a
hypothetical claimant's ability to perform Plaintiff's past
relevant work, the ALJ specifically differentiated her finding
from a limitation to only simple, routine, or repetitive tasks:

> Q:   I'd like to ask you to assume someone the
> same age and educational background as [Plaintiff]
> . . . limited to relatively simple work, and by
> that I mean simple or well-learned tasks, but not
> - I'm not talking one-to-two steps, I'm -
>
> A:   OK, so what you're saying is, is low
> semiskilled . . . work.

17 - OPINION AND ORDER

Tr. 92-93.  The VE testified an individual with Plaintiff's limitations was capable of performing the jobs of cashier and waitress.  Tr. 93-95.

The ALJ also asked the VE to advise whether any of her testimony conflicted with the DOT.  The VE, however, did not testify that her finding of check cashier or waitress was inconsistent with the DOT as to the hypothetical task limitation and Reasoning Level Three.

On this record the Court concludes the ALJ did not err at Step Four when she found Plaintiff can perform her past relevant work as a check cashier or waitress.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 4th day of March, 2016.


_____
ANNA J. BROWN
United States District Judge